IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LORI ANN SLABON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Civil No. 20-20 |
| ANDREW M. SAUL, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

ORDER

AND NOW, this 15th day of April, 2021, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision denying Plaintiff's application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, finds the Commissioner's decision is supported by substantial evidence and will grant Defendant's motion.  *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153—54 (2019); *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir.1988)); *Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990) ("The court may neither reweigh the evidence, nor may we reverse the Secretary merely because we would have decided the claim differently.") (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981)).[1]

---

[1]   This case is before the Court a second time, after previously being remanded to the Administrative Law Judge ("ALJ") for further consideration of Plaintiff's disability insurance benefits claim.  *Slabon v. Berryhill*, No. CV 18-26, 2019 WL 1216389, at *2 (W.D. Pa. Mar. 14, 2019).  When the ALJ considered Plaintiff's claim a second time, he determined Plaintiff was not under a disability between March 2, 2013, the alleged onset date, and December 31, 2018, the date she was last insured.  (R. 559).  Plaintiff asks the Court to reverse that decision or remand the matter for further administrative proceedings, arguing the ALJ misread and rejected certain evidence without adequate explanation or examination.  (Doc. No. 15, pgs. 12—

16). The Court disagrees and finds that substantial evidence supports the ALJ's determination, based on all the evidence presented, of Plaintiff's non-disability.

The Court reviews the Commissioner's final decision to determine whether substantial evidence exists in the record to support it. *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989). Where the Commissioner's findings are supported by substantial evidence, they are "conclusive." *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is not a high evidentiary bar—it requires merely "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 139 S. Ct. at 1154. However, the presence of some supportive evidence does not mean the ALJ's decision is supported by substantial evidence where the ALJ failed to consider all the evidence, resolve conflicts in evidence, or explain the basis for giving evidence a certain weight or rejecting it outright. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999); *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence."). Moreover, the ALJ may not reject certain evidence for "no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (citing *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir.1993)). Having considered Plaintiff's arguments, the ALJ's decision, and the record, all according to the deferential standard of review, the Court finds the ALJ's decision is supported by substantial evidence and will grant the Commissioner's summary judgment motion.

The evidence at the center of this matter is the same medical opinion evidence that the ALJ was required to give additional consideration on remand. This medical opinion is an evaluation form completed by Dr. Saborio, Plaintiff's primary care physician; it appears in the record as Exhibit 8F; and it is titled "Physical Treating Medical Source Statement" (R. 505) (hereinafter referred to as "the evaluation"). In the evaluation, Dr. Saborio provided answers to fill-in-the-blank style questions about Plaintiff's diagnoses, symptoms, pain, clinical findings, etc. (R. 505). Open-ended questions appear at the beginning of the evaluation ("List your patient's *symptoms*"), and later questions are more specific. For example, question fourteen asks "To what degree can your patient tolerate work stress?" (R. 506). This question is followed by four possible answers: "[1] Incapable of even 'low stress' jobs . . . [2] Capable of low stress jobs . . . [3] Moderate stress is okay . . . [4] Capable of high stress work." (R. 506). Responding to multiple-choice questions such as this one, Dr. Saborio indicated his answer with an "X" or by circling one of the preset options. (R. 506—08). Responding to the stress-tolerance question just given as an example, Dr. Saborio placed an "X" next to "Incapable of even 'low stress' jobs," and, next to the follow-up question "Please explain the reasons for your conclusion," added "Uncontrolled depression." (R. 506). That finding—that Plaintiff would be incapable of even low stress jobs—is one the ALJ failed to consider in the first instance and was directed to consider upon remand. *Slabon*, 2019 WL 1216389, at *2.

On remand, the ALJ afforded Dr. Saborio's stress-tolerance finding little weight, finding it inconsistent with objective evidence of Plaintiff's mental health. (R. 556). This time Plaintiff takes no issue with the ALJ's treatment of the stress-tolerance finding. However, Plaintiff argues the ALJ failed to adequately address *two other* findings in the evaluation. The first is Dr. Saborio's answer to question thirteen, "How often during a typical workday is your patient's

experience of pain or other symptoms severe enough to interfere with **attention and concentration** needed to perform even simple work tasks?" (R. 506). Dr. Saborio had five answers to choose from—never, rarely, occasionally, frequently, and constantly. (R. 506). He selected "frequently." (R. 506). The second finding at issue is Dr. Saborio's prediction of Plaintiff's number of absences per month. (R. 508). Dr. Saborio marked an "X" next to "More than four days per month." (R. 508). The ALJ explicitly considered these two findings in his decision, but afforded them "little weight," because they were "not consistent with the overall objective findings showing deficits of mood and affect but no lasting deficits . . . of hygiene, dress, psychomotor activity, speech, thought process, suicidal ideation, memory, attention, concentration, orientation, or insight and judgment." (R. 556). He further found they were not consistent with Plaintiff's "mental health treatment history" which he had "discussed in detail" earlier in the decision. (R. 556). Plaintiff argues the ALJ erred insofar as he only considered her mental health record and treatment history, but not her physical pain and evidence thereof to the extent it could have resulted in attention and concentration limitations ("off-task time") and an absence limitation. (Doc. No. 15, pgs. 14—15) (arguing the ALJ "failed to explain why he believed Dr. Saborio's opinion as to Plaintiff's ability to maintain attention and concentration for even simple work tasks and monthly absences was solely related to her mental health impairments and symptoms.").

The primary thrust of Plaintiff's argument can be surmised thus: Plaintiff believes Dr. Saborio's findings regarding Plaintiff's off-task time and absences should have been informed by both Plaintiff's mental and physical health but was only informed by the former. Plaintiff calls this "misreading" damaging "because it caused [the ALJ] not to consider any of the findings related to Plaintiff's physical impairment," such as Plaintiff's chronic pain. (Doc. No. 15, pg. 15). Plaintiff further complains the ALJ implicitly rejected, without explanation, evidence in the record of her physical condition that would have supported Dr. Saborio's findings. The Court is unpersuaded. It is evident to the Court that the ALJ compared Dr. Saborio's findings to Plaintiff's mental health records because the evaluation focused on Plaintiff's mental health. As noted above, the first page of the evaluation provides fields for, *inter alia*, diagnoses, prognosis, symptoms, pain levels, clinical findings, treatment, and anticipated duration of impairments. (R. 505). Although Dr. Saborio was Plaintiff's primary care physician and treated her physical conditions, for this evaluation, under "Diagnoses," he listed only "Depression." (R. 505). For symptoms—"including pain"—he wrote "Depressed, not enjoying activities." (R. 505). He identified clinical findings and objective signs as "Depression. [N]ot enjoying activities." (R. 505). Zoloft and Bupropion (antidepressants) were the only identified treatments. (R. 505). He responded "N/A" to the following prompt: "If your patient has pain, characterize the nature, location, frequency, precipitating factors, and severity of your patient's pain." (R. 505). It was in this context that Dr. Saborio found Plaintiff's "pain *or other symptoms*" would frequently interfere with attention and concentration necessary for simple work. (R. 506) (emphasis added). Given Dr. Saborio's focus on the effect of Plaintiff's depression on her abilities, it was appropriate for the ALJ to compare Dr. Saborio's findings to objective evidence of Plaintiff's mental health condition.

The presence of several questions on the evaluation form that contemplate physical limitations, *e.g.*, how often Plaintiff might need to change positions at a job, do not undermine

3

the Court's conclusion that the ALJ was reasonable to find Plaintiff's mental health record outweighed the findings in the evaluation. The questions on the evaluation that implicated Plaintiff's physical health required very little of Dr. Saborio. In response to those questions, Dr. Saborio merely marked an "X" or drew a circle to indicate his response without further explanation. (R. 506—08). Such "check a box or fill in a blank" responses are weak evidence. *Mason*, 994 F.2d at 1065. Check-box considerations are especially at play here regarding Dr. Saborio's absences finding. For this finding, Dr. Saborio was not required to provide any explanation for his prediction that Plaintiff would require four or more absent days each month, nor was he asked to provide an upper limit to how many days she might need. (R. 508). Thus, little weight was appropriate considering the reliability of the opinion. *See Mason*, 994 F.2d at 1065.

The Court also finds it natural the ALJ would look to Plaintiff's mental health records to determine whether Plaintiff suffered attention and concentration deficits. Attention and concentration are mental functions whether their origin lies in a physical or mental health condition. Therefore, whatever the cause of Plaintiff's alleged attention and concentration deficits, it was reasonable for the ALJ to expect a manifestation of those deficiencies in Plaintiff's mental health records. The ALJ scoured those records to ensure he did not miss any evidence that might confirm proposed limitations. (R. 554—55) (citing Ex. 1F, 3F, 5F, 7F, 11F, and 13F). Throughout Plaintiff's mental health records, she was described as cooperative during exams, oriented in all spheres, and lacking in any significant impairment of memory or judgment. (Ex. 1F at R. 237; Ex. 3F at R. 260; Ex. 13F at R. 1068). Though she complained of difficulty concentrating on occasion, she was attentive and her interactions with providers were consistently normal. (Ex. 5F at R. 375; Ex. 7F at R. 502). The ALJ acknowledged her testimony concerning how pain could affect her concentration. (R. 551). However, after reviewing Plaintiff's 2012—2018 mental health records, the ALJ concluded that Plaintiff had "deficits of mood and affect," but "no lasting significant deficits of . . . thought process, memory, attention, concentration, orientation, or insight and judgment." (R. 555); (R.549) (discussing the mental disorder listings). The Court finds the ALJ's decision in this regard is supported by substantial evidence and notes that the lack of objective evidence concerning purported attention and concentration deficits is particularly forceful. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say.").

The Court further notes that the ALJ thoroughly reviewed Plaintiff's physical health records to arrive at the non-disability determination. From the ALJ's comprehensive review of Plaintiff's physical and mental records, he found Plaintiff suffered from three severe impairments (degenerative disc disease, depression, and anxiety), and several non-severe impairments. (R. 547—48). The ALJ was attentive to evidence of all impairments—severe and non-severe—particularly symptoms related to Plaintiff's lumbar and cervical spine problems, *e.g.*, evidence that conditions of the spine had resulted in decreased range of motion and tenderness, but not "lasting deficits of gait, strength, sensation, reflexes, or atrophy." (R. 552). The ALJ found Plaintiff's spinal conditions and headaches were manageable, and that, overall, Plaintiff's course of treatment for those conditions had been relatively conservative. (R. 553). Formulating the RFC, the ALJ considered that objective evidence, Plaintiff's testimony as to her

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 14) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 16) is GRANTED.

/s Alan N. Bloch
United States District Judge

ecf:   Counsel of Record

---

symptoms (R. 550—51), her activities of daily living (R. 555—56), and the opinion evidence (R. 556—57).  Considering those inputs, the ALJ determined that Plaintiff had "the residual functioning capacity to perform light work . . . except [she] requires a sit/stand option at the work station, changing positions every 15 minutes while continuing to work, and she is able to tolerate occasional interaction with supervisors and co-workers but is not able to tolerate public interaction."  (R. 550).  That RFC made three occupations available to Plaintiff: collator, small parts assembler, and inspector.  (R. 559).  The ALJ specified that Plaintiff could perform such occupations at an SVP of 2 (R. 559), *i.e.*, at an unskilled level.  *Zirnsak v. Colvin*, 777 F.3d 607, 616 (3d Cir. 2014).  Unskilled work is work which "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a).  The analysis and RFC formulation thus demonstrates to the Court that the ALJ did not overlook evidence of Plaintiff's physical impairments.

For the foregoing reasons, the Court finds the ALJ did not fail to consider any evidence, nor did he reject any evidence without a reason or for the wrong reason.  The decision permits this Court's meaningful review, and, having exercised that reviewing power, the Court finds the underlying decision is supported by substantial evidence.  Further, while, in her motion for summary judgment, Plaintiff indicated remand would be necessary on the ground that "there is new and material evidence that should be considered by the Commissioner," (Doc. No. 14), the Court finds no development of an argument supporting that statement in the accompanying brief.  Therefore, the Court will not address such an issue.  *Salyards ex rel. Pittinger v. Astrue*, No. CIV.A. 11-151, 2013 WL 53728, at *2 (W.D. Pa. Jan. 3, 2013).  Accordingly, the Court grants Defendant's Motion for Summary Judgment.